```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

---------------------------X
                            :
UNITED STATES OF AMERICA,   :
                            :    04-CR-821 (NG)
         v.                 :
                            :    January 26, 2012
JOSHUA KESTENBAUM,          :
                            :    Brooklyn, New York
              Defendant.    :
                            :
---------------------------X


          TRANSCRIPT OF CRIMINAL CAUSE FOR CONFERENCE
            BEFORE THE HONORABLE ROBERT M. LEVY
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          LORETTA LYNCH, ESQ.
                             UNITED STATES ATTORNEY
                             BY: BONNI PERLIN, ESQ.
                                 JAMES McGOVERN, ESQ.
                             ASSISTANT U.S. ATTORNEYS
                             271 Cadman Plaza East
                             Brooklyn, New York  11201



For the Defendant:           ALAN LEWIS, ESQ.




Audio Operator:


Court Transcriber:           ARIA SERVICES, INC.
                             c/o Elizabeth Barron
                             102 Sparrow Ridge Road
                             Carmel, NY 10512
                             (845) 260-1377



Proceedings recorded by electronic sound recording,
transcript produced by transcription service
```

| | |
|---|---|
| 1 | THE CLERK:  Criminal cause for conference, United |
| 2 | States v. Joshua Kestenbaum, docket number 04-CR-821. |
| 3 | Please state your appearances for the record. |
| 4 | MS. PERLIN:  Bonni Perlin for the United States. |
| 5 | MR. LEWIS:  Alan Lewis, Carter, Ledyard & Milburn, |
| 6 | for Mr. Kestenbaum. |
| 7 | MR. McGOVERN:  James McGovern for the United |
| 8 | States as well.  Good afternoon, your Honor. |
| 9 | THE COURT:  Good afternoon. |
| 10 | All right, so this is my first official |
| 11 | involvement in the case.  I understand the government and |
| 12 | the defense have a slightly different view about this case. |
| 13 | MS. PERLIN:  Yes, your Honor. |
| 14 | MR. LEWIS:  Fair to say. |
| 15 | THE COURT:  So I think it would just be useful if |
| 16 | you could just outline your different views about the case |
| 17 | and what you think the Court should do, in other words hold |
| 18 | a hearing, do something else, basically how you think the |
| 19 | dispute could best be resolved. |
| 20 | MR. LEWIS:  Who would you like to address that at |
| 21 | this time? |
| 22 | THE COURT:  Maybe I'll start with the government. |
| 23 | MS. PERLIN:  Your Honor, the government seeks to |
| 24 | have the Court modify Mr. Kestenbaum's payment plan based on |
| 25 | its discovery and investigation of Mr. Kestenbaum's finances |

1   and Bake Me a Wish's finances.

2         We believe that Mr. Kestenbaum has the ability to

3   make payments towards his restitution of at least $10,000 a

4   month.  It's my understanding that Mr. Kestenbaum at the

5   present time has not been paying any restitution, that he

6   has not paid restitution for approximately six months.  He

7   can correct me if I'm wrong.

8         THE COURT:  The total restitution amount is eleven

9   million, is that right?  Do I have that right?

10         MS. PERLIN:  It is $11,159,447.

11         THE COURT:  Okay.

12         MS. PERLIN:  At the time of sentencing, Judge

13   Gershon had ordered Mr. Kestenbaum to pay $2,500 a month,

14   with the understanding that his finances would be

15   investigated and his payment plan would be modified, if

16   appropriate.

17         Currently, Mr. Kestenbaum's mother has been paying

18   his $6,000 a month rent.  His wife earns approximately

19   $6,000 per month from her job and from distributions from a

20   family trust.  Mr. Kestenbaum's chilren are now college age

21   and older, so Mr. Kestenbaum does not require significant

22   for any necessary living expenses.

23         Kestenbaum argues that the government hasn't

24   demonstrated that he has used Bake Me a Wish's funds to pay

25   for lavish personal expenses.  I believe that the

1    government's -- the motion and the thousands of pages of

2    exhibits, the bank statements and the accounting records

3    demonstrate that, although I might not be able to identify a

4    significant tangible asset that he spent the money on, he

5    has in fact spent close to a million dollars of the

6    company's funds on personal expenses for himself and his

7    family.

8            THE COURT:  During what period?

9            MS. PERLIN:  From the time that the company was

10   started, which was before he was sentenced, I believe in

11   2004, up through 2010, I believe is when -- was the end of

12   the accounting records that I have from the company.

13           THE COURT:  What was the date of sentencing?

14           MS. PERLIN:  It was 2008.  The judgment date is

15   June 12th, 2008.  Mr. Kestenbaum has argued that Bake Me a

16   Wish is not profitable and has been operating on a shoe-

17   string budget and any minute, it could disappear.  But it

18   has been operating for approximately eight years, all while

19   paying for his personal expenses, and is currently

20   profitable, is my understanding based on his supervising

21   probation officer's conversations with Joseph Dornoff (ph),

22   who is another employee, who is now I think an owner of Bake

23   Me a Wish.

24           Nevertheless, even when Bake Me a Wish was

25   reportedly just breaking even, it was breaking even while

1    paying for Mr. Kestenbaum's personal expenses, and the

2    government believes that that money would be better spent on

3    Mr. Kestenbaum's restitution judgment instead of himself.

4    We are not asking Bake Me a Wish to pay Mr. Kestenbaum

5    really any more than it has been over this eight-year

6    period.  We're just asking that the funds be used to pay

7    restitution.

8           The one question that we still have, and I would

9    like to take additional discovery on now is about Mr.

10   Kestenbaum's mother's finances.  She appears to have --

11   well, she has given Mr. Kestenbaum personally and the

12   business significant funds since the business was started.

13   I think it was approximately a year and a half ago, she took

14   out a home equity loan to repay a loan that was allegedly

15   taken out by Mr. Kestenbaum's wife from the business.

16          Mr. Kestenbaum represented at his deposition that

17   she didn't have much in the way of finances.  The home,

18   actually a year ago today, I just discovered, was

19   transferred to a trust, a Kornago (ph) 2010 trust, I

20   believe.  So I would like to take quickly just some

21   discovery into whether or not his mother actually has any

22   documentation for the alleged loans to the company, how

23   she's been able to support Mr. Kestenbaum and lend money to

24   the company over the years, and I'd like to know more about

25   this recent transfer of the house to a trust.

1          As far as where this proceeding is going, I don't

2    know if the Court is comfortable in making a determination

3    based on the papers.

4          THE COURT:  That is the question.  I have a boxful

5    of papers.

6          MS. PERLIN:  I think it's possible.  I did take

7    four or five depositions.  The bank statements really speak

8    for themselves, the accounting records combined with the

9    testimony.

10         THE COURT:  Is the government requesting a hearing

11   or waiting to see whether it's necessary at this point?

12         MS. PERLIN:  I think we're just waiting --

13         THE COURT:  Not sure?

14         MS. PERLIN:  -- yeah, to see if the Court believes

15   it's necessary.

16         THE COURT:  It may be.  I'm just not at the point

17   yet where I know.

18         MS. PERLIN:  Right.

19         THE COURT:  I'm sure I'll hear from defendant on

20   whether a hearing is necessary as well.

21         What's the date of the most recent probation

22   report on Mr. Kestenbaum's finances?

23         MS. PERLIN:  A financial statement submitted by

24   Mr. Kestenbaum?

25         THE COURT:  Yes.

1          MS. PERLIN:  I actually haven't seen any of those.

2          THE COURT:  Okay.

3          MS. PERLIN:  Mr. Kestenbaum was being supervised

4   by the Southern District of New York up until recently.

5          THE COURT:  Right.

6          MS. PERLIN:  And I believe that his current

7   Eastern District of New York probation officer has requested

8   financial statements.  I don't know if she's received them.

9   I haven't seen any of them.  I've only seen the financial

10  statement he submitted to the financial litigation unit,

11  which was back in, I believe, the summer of 2008.

12         THE COURT:  So Probation in the Eastern District

13  has not updated that report, as far as you can tell.

14         MS. PERLIN:  I do think that Mr. Kestenbaum

15  recently submitted tax returns and bank statements.  I don't

16  recall if he submitted a new financial.  He can probably

17  tell you that.

18         THE COURT:  I'm sure he can.

19         THE DEFENDANT:  I did.

20         THE COURT:  You did.  Do you remember when?

21         THE DEFENDANT:  Three weeks ago.

22         THE COURT:  Three weeks ago, okay.  So nothing has

23  come out of Probation yet then, is that right, no analysis,

24  no report, no update?

25         THE DEFENDANT:  Not that I'm aware of.

1          MR. LEWIS:  Not that we are aware of, your Honor.

2          MS. PERLIN:  The Probation Department recently, I

3     think it was in a combined objection to Mr. Kestenbaum's

4     request for travel, noted that they were considering

5     submitting a request for a violation of probation, based on

6     his failure to pay restitution and failure to make full

7     financial disclosure.  I believe they had asked Judge

8     Gershon for an extension to submit a memo through some time

9     in February.

10          MR. LEWIS:  They asked for an extension until

11    February 28th, I believe.  I'm sorry, my understanding is

12    that the Probation Department asked for an extension.  Is it

13    not coming through.  The green light is on.  Ah, the light

14    is now on.

15          THE COURT:  Just pull it a little closer to you,

16    then you'll be comfortable.

17          MR. LEWIS:  My understanding is that the Probation

18    Department has asked for additional time, until February

19    28th, to decide whether to initiate a violation proceeding.

20          THE COURT:  So the Probation Department is going

21    to complete its own investigation and then make its

22    recommendation.

23          MR. LEWIS:  Apparently, yes.

24          THE COURT:  Okay.

25          MS. PERLIN:  I do think, your Honor, that if this

1    proceeding ultimately goes to a hearing, I'm actually

2    confused as to how that's going to work with the violation

3    proceeding, considering that his failure to pay restitution

4    is really the subject of both.

5            THE COURT:  Right.  Well, it may make sense to

6    consolidate them into one proceeding.

7            MS. PERLIN:  Yeah.

8            THE COURT:  Again, that's something that I think

9    procedurally, I could use your input on what you think is

10   the most efficient way to handle this from both sides.  It's

11   just something to think about.  You may not know the answer

12   to that today.

13           (Pause in Proceedings)

14           MS. PERLIN:  I think that -- I guess the two

15   proceedings are -- depending on whether or not your Honor

16   believes you can make a determination based on the papers

17   and depending on what Judge Gershon decides to do given that

18   Mr. Kestenbaum is not paying restitution at all right now,

19   that it may make sense at some point to consolidate the two.

20           THE COURT:  What does the defendant think?

21           MR. LEWIS:  We agree that if there are to be

22   hearings on both matters, that it would make a great deal of

23   sense to consolidate them rather than -- particularly, two

24   different hearings in two different courtrooms doesn't make

25   a lot of sense.

1          THE COURT:  Right.  I don't think there would be

2  -- I think I would be doing both is my guess, because I

3  think that's why Judge Gershon referred it.

4          MR. LEWIS:  I would agree that you should -- if

5  indeed the Probation Department decides to pursue a

6  violation proceeding -- I don't know that they will but if

7  they do, we would agree that you should consolidate that

8  proceeding with any hearing you decide to conduct here.

9          THE COURT:  So it could be that the hearing could

10 be applicable to both proceedings, and the violation

11 proceeding could either proceed before me or before Judge

12 Gershon.  But as a matter of efficiency, it would seem to

13 make sense to have only one hearing.

14         MR. LEWIS:  I agree.

15         MS. PERLIN:  I agree.

16         THE COURT:  Okay.  Is there anything else the

17 government wishes to say at this point?

18         MS. PERLIN:  No.

19         THE COURT:  Does Mr. Kestenbaum want to add

20 anything at this point?

21         MR. LEWIS:  I will for him, your Honor.

22         THE COURT:  Okay.

23         MR. LEWIS:  I didn't come here today to make an

24 argument.  I didn't understand this to be the purpose of

25 today's appearance.

1           THE COURT:  No, it's not.

2           MR. LEWIS:  But I'll only very briefly summarize

3    our position here.

4           The government doesn't claim -- and it's conducted

5    quite an extensive investigation.  It doesn't claim that Mr.

6    Kestenbaum is hiding any money or accounts, money overseas,

7    money in banks, money held for him under the names of

8    others.  It's looked pretty hard, I think.  And what all of

9    this is about is its claim that he can use Bake Me a Wish to

10   pay much more in restitution than the $2,500 a month that

11   Judge Gershon ordered in 2008.  For reasons that I've argued

12   in the papers, I don't think that that is true.

13          First of all, I don't think it's correct that Bake

14   Me a Wish's assets are Mr. Kestenbaum's to use as he

15   pleases.  It has an outside investor who paid for his

16   investment in the entity.  Family members of his also own

17   equity, and that equity interest was purchased with money

18   that was expressly reserved for them.  And I don't believe

19   that Bake Me a Wish's assets belong to Mr. Kestenbaum, and I

20   don't believe that he can decide on his own to use them.

21          What he can do is he can use his income.  Right

22   now, he hasn't had one.  I understand that Bake Me a Wish's

23   finances, its financial stability is tenuous; it rises and

24   it falls.  It's not constant and at times, they can afford

25   to pay him, and at times, they can't.  I understand that --

1    and I believe very recently, they started to pay him a

2    modest salary again, and he intends to do the best to pay as

3    much restitution as he possibly can.

4            However, his salary has always been modest.  The

5    total amount of money that he's gotten from Bake Me a Wish

6    has been relatively modest over the years, and I just -- an

7    order that would require him to pay much more in restitution

8    than he's paid in the past could only be satisfied by Mr.

9    Kestenbaum if he were to ask the company -- and he has

10   influence over its decisions as its president, as its chief

11   executive.  He doesn't control it entirely by himself; there

12   are other people that have to be consulted.

13           But even if it were true that he could, by

14   himself, cause the company to pay him lots of money, the

15   Court shouldn't do that.  Its finances are quite tenuous.

16   At best, it's been operating at break even for some time.  I

17   think it lost about $80,000 last year.  And its balance

18   sheet shows that the company is ailing.  It is technically

19   insolvent and I was surprised that the government sought to

20   have the Court order Mr. Kestenbaum to pay lots of money out

21   of the assets of an entity, without even analyzing its

22   balance sheet.

23           THE COURT:  Can you tell me about the entity, just

24   a brief, thumbnail description of it?

25           MR. LEWIS:  The business idea is that

1  historically, businesses have kept in touch with their

2  clients and earned their client's good will by sending them

3  things like birthday cards.  It's important to people

4  generally to have their birthday be remembered, and the

5  concept of Bake Me a Wish is to take it up from simple

6  birthday cards to cakes.

7        Mr. Kestenbaum's -- I may not be perfect to

8  describing exactly where it sits in its process, but its

9  clients essentially are its customers who want to remember

10  its own clients' birthdays by sending them cakes.  Mr.

11  Kestenbaum's cxompany basically is the middle person, the

12  middle man in that process between whatever the business is

13  and the birthday cake recipient.  So they arrange for the

14  baking of the cakes, they contract for them.  That's what

15  they do.

16        So in terms of how the Court should go about

17  deciding the issues that have been raised here and whether a

18  hearing is necessary, I don't come here believing that a

19  hearing is necessary, but I think that ultimately, the

20  answer to that question depends on the Court's analysis of

21  the issues that have been raised by both sides in the

22  papers.  And perhaps it makes sense to have another

23  conference, at which the Court might identify -- if there

24  are factual issues that the Court feels that it can't decide

25  based on the papers, maybe it would make sense to discuss

1   them or even -- well, that would be the approach I would

2   recommend.

3          THE COURT:  Where does Probation fit in, in this

4   scenario?  Do we need them at the next conference?  Do we

5   need to wait for them to do an analysis?  Do we wait to see

6   whether Probation brings a violation?

7          MR. LEWIS:  Since it is obviously possible that

8   they will bring a violation proceeding, and if they do, any

9   factual issues will be combined -- that your Honor

10  identifies will be combined into the same hearing, I agree

11  it doesn't make any sense certainly to start conducting a

12  hearing before they weigh in.  I think that between -- I

13  would certainly wait for their decision before a hearing is

14  conducted, if a hearing is ever necessary.

15         THE COURT:  Do we need them for the next

16  conference?

17         MR. LEWIS:  I think that depends on what the next

18  conference is for.

19         THE COURT:  Well, if it's what you suggest.  Both

20  parties and the Court will have reviewed the papers

21  carefully and be prepared to discuss the issues at that

22  point, to determine whether there are factual issues, legal

23  issues alone, whether a hearing is necessary.  Is Probation

24  -- is its attendance optional, useful, not at all useful at

25  such a conference?

1    MR. LEWIS:  It is -- I think that unless and until

2 they bring a violation proceeding, their appearance here is

3 certainly not required, and I don't even know that it's

4 helpful or necessary.  If they do bring a violation

5 proceeding, then they should be here, so that we can

6 consolidate things.

7    MS. PERLIN:  I think it would be useful, at the

8 very least, to have a probation officer here, given that

9 Probation ha much more up-to-date information about Mr.

10 Kestenbaum's finances and what he's reporting currently.  We

11 are not currently requiring Mr. Kestenbaum, although I don't

12 know about in the future, to report as frequently as he does

13 to Probation.

14    THE COURT:  All right.  Is there anything that we

15 haven't touched on that we should discuss?

16    MR. LEWIS:  I'm just looking over my notes.  I

17 don't agree with some of the things that Ms. Perlin said

18 that I haven't yet addressed.

19    THE COURT:  Okay.

20    MR. LEWIS:  But I don't know that I need to do all

21 of that today.  After the Court has read the papers and we

22 have a more formal argument, I'd like an opportunity to

23 address that more fully.

24    THE COURT:  Surely.

25    MR. LEWIS:  I think that we've sketched the

1  outlines of how we're going to proceed from here, so I don't

2  think I need to add anything more.

3          THE COURT:  Okay.

4          MS. PERLIN:  Your Honor, I would like the

5  opportunity for further argument at some point as well.  I

6  don't agree with much of what Mr. Lewis said today.

7          THE COURT:  I would assume you don't agree on very

8  much, both sides.  This is really just a scheduling,

9  procedural conference.  We'll get into substance later.

10          So do we all agree that it does not make sense to

11  have the conference until after the 28th of February?

12          MS. PERLIN:  Yes.

13          MR. LEWIS:  Yes.

14          THE COURT:  Do you want to do it right after the

15  28th or wait a week or two just to let the dust settle?  Does

16  it matter?

17          MS. PERLIN:  A week might be good, just to give

18  everybody a chance to read it.

19          MR. McGOVERN:  We're just discussing over here on

20  our side, your Honor, that Judge Gershon presumably will

21  receive a violation report prior to February 28th, and then I

22  would expect that she would order the parties to appear in

23  front of her within a couple of days after that.  So maybe

24  two weeks after the 28th might be a good date.

25          THE COURT:  Okay.

1          MR. McGOVERN:  Obviously, that's going to be with

2     the caveat that our hearing may be unnecessary, given what

3     happens in front of Judge Gershon when she finds out that he

4     hasn't been paying any restitution as opposed to just paying

5     a --

6          MR. LEWIS:  She was told that a long time ago.

7     She's not going to find that out.  We told her that at the

8     last --

9          MR. McGOVERN:  I understand.

10          MR. LEWIS:  Right.

11          MR. McGOVERN:  We just don't know what her

12     reaction is to that.  She may be pleased by it, she may be

13     unhappy about it.  We'll find out what happens when we

14     appear before her.

15          THE COURT:  Well, two weeks is reasonably anyway,

16     two weeks after the 28th.  I actually have a block of time on

17     the 15th of March, which is a Thursday.

18          MR. LEWIS:  I have a court appearance in the

19     morning but I'm available -- that shouldn't spill over to

20     the afternoon.  So after 2:00 is fine that day.

21          THE COURT:  After 2:00?  Okay, I have a 3:00, so

22     we could do it at 2:00 or 3:30, whichever you prefer.

23          MR. LEWIS:  I'd say 3:30.

24          THE COURT:  3:30?  Okay.

25          MR. LEWIS:  Your Honor, I do have one request.  I

1  don't know if your Honor could address it, but the document

2  that the Probation Department recently submitted to Judge

3  Gershon was submitted under seal, and I didn't even know

4  that it had been submitted.  There was nothing on the docket

5  that indicated that it had been submitted.  I learned of it

6  in communicating with Judge Gershon's courtroom deputy, and

7  I then had to make an application to unseal the document.

8  This is the document in which Probation requested additional

9  time to consider whether to bring a violation proceeding.

10       They made some statements about a travel request

11 that we had made that I would have liked to respond to in

12 time for it to make a difference.  But because of the amount

13 of time that it took to make the application, have it

14 decided to unseal that document and then get a copy, we

15 weren't able to respond to a part of it in time for it to

16 make any difference.

17       So what I'd like to ask is if you could order the

18 Department of Probation to submit a copy to me for Mr.

19 Kestenbaum and anything that they submit under seal -- I

20 think that it's their routine practice to submit things

21 under seal.  Most of the time, they're submitting probation

22 reports, which have to be submitted under seal.  But I

23 shouldn't have to go through a process to get a copy of the

24 document that explains why they're proceeding as they are.

25       MR. McGOVERN:  I actually don't know the answer to

1    that question.  I think if the question is or the request is

2    to copy the defense on everything that's filed between the

3    Probation Department and the Court, I actually don't know

4    what the rules are.  I'm sure there's a good reason why

5    those matters are being handled in a confidential manner.

6            If we were asked to respond to this or move or

7    something like that, I guess we may investigate it, but I

8    don't know whether -- who has the authority to or if they

9    have the authority to order such a thing, that the Probation

10   Department start revealing all of its communications with

11   the Court that's supervising a given defendant.

12           MR. LEWIS:  But a report as to whether they're

13   going to initiate a violation proceeding is something of

14   which we obviously have to be given notice.  Due process

15   requires it.  There's no conceivable reason why we would not

16   be entitled to see it, and it may be --

17           MR. McGOVERN:  I think that sounds right.  I mean,

18   that sounds right.

19           THE COURT:  Yeah, that sounds right.

20           MR. McGOVERN:  But the other thing about -- what

21   you originally bootstrapped, which was a communication

22   between the Probation Department and the Court about a

23   travel request, I believe it was, that I don't know if --

24   those sorts of communications, I don't know if they're

25   subject to review by the defense before they're made to the

1    Court.

2         That said, my experience tells me that if somebody

3    files a violation report against the defendant, typically,

4    the defendant is fully apprised of the contents of that

5    report.  So I would think that that would be something that

6    an order of this Court would be unnecessary for you to

7    receive.

8         MR. LEWIS:  And I make the request because the

9    last time they submitted a report, they didn't let me know

10   that they submitted it, there was nothing on the docket.

11   But for the happenstance of my talking to the courtroom

12   deputy, it does not appear that I would have been informed

13   of its filing.

14        THE COURT:  Maybe you should start by just

15   contacting Probation, the probation officer who's assigned,

16   and say that you would like to either get copies of

17   correspondence that goes to the Court or be notified when

18   there is correspondence to the Court, so that you can move

19   to have it unsealed.

20        MR. LEWIS:  I can try that.  In the last instance,

21   when I learned of the submission under seal -- when I

22   learned of the submission, I contacted the Probation

23   Department, and they informed me it had been submitted under

24   seal.  But I will certainly communicate that regarding to

25   the Probation Department, and I suppose if the answer is

1    unsatisfactory, I can renew the request.

2              THE COURT:  I think if the communication comes to

3    me, I have no problem -- and there's no statute that says

4    that the submission has to be under seal, then I would not

5    have a problem with those -- unless the government has an

6    objection, we could talk about it.  But I would have no

7    problem and I have no problem telling Probation that.  I

8    can't speak for Judge Gershon, you know, whether

9    communications to her, she would want to have remain under

10   seal or not.  You know, I would never speak for another

11   judge.

12             So to the extent there are communications to me

13   from the Probation Department, you can tell the Probation

14   Department that unless they believe there's as specific

15   reason why it needs to be sealed and why the defendant would

16   not have access to it, that there should be an exception to

17   the sealing, to allow at least the defendant to have access.

18   I think you can informally say that, and they will probably

19   want to communicate with me and find out if that's -- what I

20   want.

21             MR. LEWIS:  Okay, I will convey that to them.

22             THE COURT:  I don't know what else to say, really.

23             MR. LEWIS:  I will do that.

24             THE COURT:  Anything else?

25             MR. McGOVERN:  No.

1             MS. PERLIN:  No, your Honor.

2             THE COURT:  Okay, so we are set for March 15th at

3    3:30.  Okay, thank you.

4             MS. PERLIN:  Thank you.

5                         * * * * * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                    February 28, 2012