

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 21, 2012

The Honorable Nina Gershon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York   11201

>        Re:   United States v. Joshua Kestenbaum
>              Criminal Docket No. 04-821 (NG)

Dear Judge Gershon:

  The government respectfully submits this letter to provide the information requested at the status conference in the above-referenced matter on June 18, 2012. This information is provided in connection with a violation of probation ("VOP") hearing that is scheduled to proceed before the Court on July 9-11, 2012 with respect to the three charges in the VOP Report filed by the U.S. Probation Office on February 28, 2012.

I.  <u>False Statements Enumerated for Charge #1</u>

  The first charge in the VOP Report is that, since commencing supervision on June 12, 2008, the defendant committed the crime of making materially false statements, in violation of 18 U.S.C. § 1001, to both the U.S. Probation Office and the U.S. Attorney's Office, regarding his income and business enterprises.

  The Court directed the government to delineate several false statements that it intends to prove to establish this violation. As noted by the Court, this list need not be – and is not – exhaustive, and it is anticipated that other false statements made by the defendant will necessarily be exposed in the course of proving the false statements set forth below, as well as in the course of proving the violations in the second and third charges of the VOP Report (tax evasion, and failure to pay restitution, respectively).

  The format below lists five categories of readily provable false statements that the defendant made to the government and/or Probation, each of which is summarized in enumerated allegations. The synopsis following each allegation lists only some of the evidence that proves the alleged false

statements. The synopses are not intended to encompass every lie that will be revealed in the evidence because there were so many.

A.  False Statement Category #1: MSR December 2010

Allegation: In the handwritten monthly supervision report for December 2010 that the defendant provided to the U.S. Probation Office, the defendant falsely reported total monthly cash inflows of $3,000.00, including $0.00 in net earnings from employment.

Synopsis: In December 2010, the TD Bank account documents for Bake Me A Wish ("BMAW") show that the defendant made multiple electronic transfers from BMAW's checking account to his personal checking account totaling $9,675.00. The defendant also caused BMAW to pay (1) $2,000.00 to the law firm of Carter Ledyard & Milburn, LLP for personal legal services, and (2) $6,250.00 to the defendant's mother Hannah Kestenbaum. The $6,250.00 check to Hannah Kestenbaum was deposited into Hannah Kestenbaum's Home Equity Line of Credit ("HELOC") account which had been used by the defendant in November 2010 to pay the defendant's rent of $6,250.00. Taking into account these payments, the defendant's effective net earnings for the month of December 2010 was no less than $17,925.00, and not $0.00 (or $3,000.00) as claimed by the defendant.

B.  False Statement Category #2: MSR January 2011

Allegation: In the handwritten monthly supervision report for January 2011 that the defendant provided to the U.S. Probation Office, the defendant falsely reported total monthly cash inflows of $2,916.41, consisting solely of $2,916.41 in net earnings from employment.

Synopsis: BMAW's TD Bank account documents for January 2011 show that BMAW issued the defendant a check for $6,250.00. Additionally, the defendant made multiple electronic transfers from BMAW's checking account to his personal checking account totaling $6,950.00. As further evidence of the defendant's control over the BMAW account, he made a $40.00 withdrawal from that account at an ATM (which appears as a $41.75 withdrawal, including a service charge). Additionally, the defendant caused BMAW to pay $868.77 to his mother, which was deposited into his mother's HELOC account – an account that had been used since its inception to pay the defendant's and his wife's personal expenses. Taking into account these payments, the defendant's effective net earnings for the month of January 2011 was no less than $14,110.52, and not $2,616.41 as claimed by

the defendant.

        C.    <u>False Statement Category #3: DOJ Financial Statement</u>

        <u>Allegation</u>:    In the U.S. Department of Justice Financial Statement dated July 28, 2008, the defendant falsely reported (1) that the only financial support from any source or person that he had received in the last six years was from his father, Joseph Kestenbaum; (2) that his monthly take home pay was $2,614.00; and (3) that his wife Vivian Kestenbaum's total monthly income was $2,400.00 and comprised solely her income from Waldman Publishing.  The defendant also falsely reported (4) that there were no payments or obligations made on his behalf by others.

        <u>Synopsis</u>:    In the six years prior to July 28, 2008, the defendant had received significant financial support from others, including BMAW and his mother.  Contrary to the defendant's statement that his wife's monthly earnings were limited to her job at Waldman Publishing, the defendant signed a BMAW payroll check on July 14, 2008 made payable to her in the amount of $3,035.94.  Additionally, in July 2008 alone, the defendant received checks totaling $7,653.36 from BMAW, and signed BMAW checks made payable to his rabbi in the amount of $800.00, his psychologist in the amount of $1,000.00, and his attorney in Las Vegas in the amount of $1,000.00 in relation to the defendant's Nevada criminal case.  Further, the defendant withdrew cash from BMAW's bank account in July 2008 totaling $700.00, and used BMAW's debit card to make payments totaling $400.00 to a chiropractor, $908.00 to two doctors, and $485.00 to his dentist.

        D.    <u>False Statement Category #4: Deposition Testimony Re False Debit Log; Production of False Debit Log</u>

        <u>Allegation</u>:    In response to questions posed by an Assistant U.S. Attorney at a deposition on March 24, 2010, the defendant testified that he had documentation of all his meals claimed as BMAW business expenses, which documentation set forth the dates and individuals with whom he conducted business at those meals.  Kestenbaum Deposition Transcript, pp. 67, 82. That documentation – which the defendant provided to the government – contained materially false statements about the defendant's claimed business expenses, not only concerning meals, but also, for example, the defendant's profligate use of taxis. The log did not contain true and accurate entries; Kestenbaum made these false entries intentionally; and Kestenbaum knew when he produced the log that it contained materially false entries.

4

Synopsis: Subsequent to the defendant's deposition testimony, the defendant produced, in response to a government subpoena, the BMAW Debit Account Card Log (the "Debit Log").

The Debit Log is a handwritten document. According to Bryce Morrison, a back office employee of BMAW, the entries on the right side of the log, which contain names and/or reasons for expenses, are in the defendant's handwriting.[1] Morrison Deposition Transcript, June 4, 2010, p. 41.

The Debit Log was used by the defendant (falsely) to substantiate that certain meal and drink expenses were business expenses. For example, the defendant falsely reported that he had gone out for meals and/or drinks with his tax preparer, John Lieberman, on at least eight occasions. Debit Log, pp. BMAW SECOND 837, 844, 849, 862, 866. John Lieberman testified at his deposition on May 21, 2010 that he could not recall ever having gone out for a meal with the defendant, other than attending a function years ago at which the defendant was the honoree – and that he had never been out for drinks with the defendant. Lieberman Deposition Transcript, pp. 27-29. In fact, Lieberman could not recall ever having been to several of the restaurants at which the defendant reported having met with Lieberman. Id. pp. 29-31 (e.g., Nice Matin, The Secret Garden, Ayza, Café Luxembourg).

The defendant also falsely claimed in the Debit Log that 127 taxi rides that he took in 2008 and 2009 were to make cake deliveries on behalf of BMAW.

---

[1] According to Morrison, he used the Debit Log since the time he joined BMAW in October 2008 to assist him in booking certain daily financial transactions of BMAW. Morrison reviewed BMAW's daily banking activity and identified certain transactions in the Debit Log about which he needed further explanation in order to book them in Quickbooks. He gave the defendant the Debit Log periodically to provide further information about the transactions identified so that Morrison could record those transactions into Quickbooks. Morrison booked an expense as a business expense if the defendant told him it was a business expense. There was no other documentation to support purported businesses expenses – it was simply the defendant's word, either in writing in the Debit Log, or often, orally to Morrison, who then booked the transactions as business expenses in Quickbooks according to the defendant's instructions. Morrison Deposition Transcript, pp. 41, 49.

Bryce Morrison and Joseph Dornoff (vice president for marketing at BMAW) testified that delivering cakes by taxi is not part of BMAW's normal business, and that in fact cakes have rarely been delivered by taxi. Dornoff Deposition Transcript, p. 39; Morrison Deposition Transcript, p. 47. In fact, BMAW's cakes are made by a bakery on Long Island and shipped to Pennsylvania for delivery by UPS daily. Morrison Deposition Transcript, p. 48.

    E. <u>False Statement Category #5: Oral Statements to Probation Officer</u>

<u>Allegation</u>: On December 23, 2011, the defendant told a U.S. Probation Officer that he has not been "dipping" into the BMAW business accounts since he was sentenced. He further specified that the only personal expenses that were paid by BMAW were his health insurance premiums and his therapist's fees.

<u>Synopsis</u>: See synopses above; Joshua Kestenbaum Deposition Transcript and other transcripts specified in section II of this letter; bank account records and other exhibits specified in section III of this letter.

II. <u>Witnesses</u>

At this time, the government expects to call two witnesses at the hearing, namely:

 Geoffrey Fig, Investigator, Financial Litigation Unit, U.S. Attorney's Office, Eastern District of New York

 Carrie Borona, United States Probation Officer, Eastern District of New York

If satisfactory to the Court, the government will move the prior deposition testimony of the below-listed witnesses into evidence at the VOP hearing. It is expected that these witnesses are available should the defense wish to cross-examine them, or to call them in the defense case. Should this occur, the government reserves the right to further examine the witnesses at the hearing.

U.S. Attorney's Office Deposition Transcripts:

 Joshua Kestenbaum, March 24, 2010

 Vivian Kestenbaum, on August 31, 2010

6

Hannah Kestenbaum, on April 27, 2012

John Robert Lieberman, on May 21, 2010

Joseph Dornoff, on May 24, 2010

Bryce Morrison, on June 4, 2010

III.     Exhibits

To assist the Court and the defense in preparing for the hearing efficiently, the government provides notice of the following categories of exhibits that it expects to offer into evidence.

- Documents subpoenaed from TD Bank and/or produced by the defendant or BMAW with respect to the defendant's and BMAW's financial accounts.

- Documents subpoenaed from Citibank and/or Hannah Kestenbaum with respect to Hannah Kestenbaum's financial accounts.

- Other documents subpoenaed from Hannah Kestenbaum including federal income tax returns.

- Documents subpoenaed from BMAW including, but not limited to, the Debit Log, Quickbooks data and reports generated by the government from the live Quickbooks data, the BMAW Internal Revenue Code § 125 Cafeteria Plan.

- Documents subpoenaed from George Rohr (a BMAW investor) with respect to the defendant and BMAW.

- Documents subpoenaed from Steven Goldstein, the former trustee of the Desk Trust.

- Monthly supervision reports submitted by the defendant to the U.S. Probation Office.

- Financial statements submitted by the defendant to the U.S. Attorney's Office.

- Federal income tax returns for BMAW, Joshua Kestenbaum and/or the Desk Trust produced by the defendant and/or subpoenaed from the defendant's tax preparer.

7

- E-mails sent from the defendant to the U.S. Probation Office.

- Schedule of restitution payments.

- Summary chart(s), to be determined.

The government is prepared to answer any further questions by the Court at the next status conference in the matter on June 22, 2012 at 10:00 a.m.

                              Respectfully submitted,

                              LORETTA E. LYNCH
                              United States Attorney
                              Eastern District of New York

By: _____
                              Ilene Jaroslaw
                              Bonni Perlin
                              Assistant U.S. Attorneys

cc: Alan S. Lewis, Esq. (*via ECF*)

    U.S. Probation Officer Carrie Borona (*via e-mail*)