UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :    Cr. No. 04-821 (NG)
                                                                 :
       -against-                                                 :    Violation of Probation Proceeding
                                                                 :
JOSHUA KESTENBAUM,                                               :
                                                                 :
                             Defendant.              :
-----------------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW
## REGARDING THE MATERIALITY ELEMENT OF 18 U.S.C. § 1001

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732-3200

# TABLE OF CONTENTS

Page(s)

Table of Authorities .................................................................................................... ii

The Legal Principles .................................................................................................... 1

Application of the Legal Principles to the Five Statements ........................................ 4

    Statements to the United States Attorney's Office ................................................. 4

    Statements to the Probation Department ................................................................. 7

Conclusion ................................................................................................................. 11

# TABLE OF AUTHORITIES

                                                                                              Page(s)

**CASES**

*Kungys v. United States*,
    485 U.S. 759 (1988) ............................................................................................ 1, 3, 4

*United States v. Abadi*,
    706 F.2d 178 (6th Cir. 1983) .................................................................................. 3, 4, 7

*United States v. Corsino*,
    812 F.2d 26, 30-32 (1st Cir. 1987) .......................................................................... 2

*United States v. Gaudin*,
    515 U.S. 506 (1995) ............................................................................................ 1, 2, 4, 8

*United States v. Mandanici*,
    729 F.2d 914 (2d Cir. 1984) .................................................................................. 1

*United States v. Rigas*,
    490 F.3d 208 (2d Cir. 2007) .................................................................................. 2, 3, 4, 6

*United States v. Rodriguez*,
    140 F. 3d 163 (2d Cir. 1988) ................................................................................. 2, 4, 7

*Weinstock v. United States*,
    231 F.2d 699 (D.C. Cir. 1956) .............................................................................. 1, 2, 3, 4

**STATUTES**

18 U.S.C. § 1001 ......................................................................................................... 1, 3, 9

Mr. Kestenbaum is charged with violating the condition of his probation that he not commit a crime. Specifically, among hundreds or thousands of statements he has made to the government and the Probation Department since his sentencing, five are alleged to have been intentionally and materially false, in violation of 18 U.S.C. § 1001. With the Court's permission, Mr. Kestenbaum submits this memorandum to aid its application of the legal materiality standard to the facts. Although this memorandum is limited to that subject, as the Court knows, Mr. Kestenbaum vigorously challenges the claim that any of the five statements were both false and made with the intent to deceive.[1] In any event, as shown below, the Department has failed to demonstrate that any of the five identified statements were material.

## The Legal Principles

A statement to the government, even *if* false *and* made with intent to deceive, does not violate § 1001 unless the purported falsity is material. "[M]ateriality is an element of the offense that the government *must* prove." *United States v. Gaudin*, 515 U.S. 506, 509 (1995). Materiality has a consistent definition in the various statutes where it is made an element. That is, "the federal courts have long displayed a quite uniform understanding of the 'materiality' concept as embedded in such statutes [as 18 U.S.C. § 1001]." *Kungys v. United States*, 485 U.S. 759, 769 (1988). Historically, it has been understood that a "misrepresentation is material if it 'has a natural tendency to influence, or was capable of influencing, the decision of' the decision-making body to which it was addressed." *Id.* at 770 (*citing Weinstock v. United States,* 231 F.2d

---

[1] While Mr. Kestenbaum's statements were *not* misleading, even if they had been, that would not suffice to prove the falsity element. "[A] defendant may not be convicted under § 1001 on the basis of a statement that is, although misleading, literally true." *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984). Thus, there is no evidentiary support for the government's argument that Mr. Kestenbaum's reporting of $0 in wages on the December, 2010 MSR was false, particularly in light of the un-contradicted testimony from Bryce Morrison that the money Mr. Kestenbaum received from BMAW in that month was a loan.

1

699, 701-02 (D.C. Cir. 1956) and *United States v. Corsino*, 812 F.2d 26, 30-32 (1st Cir. 1987)). However, a statement's theoretical capability to influence a decision is not enough to make it material. Rather, it must be "*predictably*" capable of affecting "the official decision." *Id.* at 771 (emphasis added). In applying this standard, "what is relevant is what *would have ensued* from official knowledge of the misrepresented fact." *Id.* By contrast, "official knowledge of [a false statement's] inconsistency," even if knowledge of that inconsistency would have affected the official decision, does *not* make the falsity material. *Id.* at 775. In other words, "what must have a natural tendency to influence the official decision is . . . the failure to state the truth, not the failure to state what had been stated earlier." *Id.* at 776.

Thus, "[d]eciding whether a statement is 'material' requires the determination of . . . what decision was the agency trying to make." *United States v. Gaudin*, 515 U.S. at 512. A *relevant* false statement is not necessarily *material*. "To be relevant means to relate to the issue. To be material means to have probative weight, i.e. reasonably likely to influence the tribunal in making a determination required to be made." *United States v. Rigas,* 490 F.3d 208, 234 (2d Cir. 2007) (quoting *Weinstock v. United States*, 231 F.2d at 701 and describing its definition of materiality "persuasive."). Thus, "in the context of an objective decisionmaking process, whether a misrepresentation is 'material' requires examination of the factors the decisionmaker would employ, and the degree to which a misrepresentation would be 'capable of influencing[]the decision of the decisionmaking body." *Id.* at 235 (internal quotes omitted).

Materiality cannot be assumed, and instead, must be supported by evidence that the statement either did or could have affected the decision in question. *See United States v. Rodriguez*, 140 F. 3d 163, 168 (2d Cir. 1988) (holding that statement, "while false," was not material because there was "no evidence adduced at trial that the misrepresentation could have,

2

or did influence" the decision at issue). *See also United States v. Rigas,* 490 F.3d at 236; *United States v. Abadi,* 706 F.2d 178, 180 (6th Cir. 1983) ("the materiality of a statement rests upon a factual evidentiary showing") (quoted with approval in *Kungys,* 485 U.S. at 771).

Any evidence presented by the government to prove materiality must be considered "in the context in which [the purported misrepresentations] were made." *Id.* at 231. Thus, a statement that appears in isolation to be material may not be, in the context of the rest of the statement or other statements made to the decision maker. As the D.C. Circuit explained in *Weinstock v. United States*:

> Materiality must be judged by the facts and circumstances in the particular case . . . . Since the jury in the case at bar found the accused guilty we may assume it found the statement which is the basis of the indictment false. But we think that in the setting in which it was made the statement was not material. *If the one sentence had stood alone it might well have been material. But in context, as merely part of the long affidavit, it was immaterial, wholly without weight or influence in any decision to be made* by the Board. *Id.* at 701-02 (emphasis added).

In sum, materiality is an element of § 1001 that cannot be assumed, but rather, must be proved. Materiality is more than relevance, and a false statement is material only *if* it is addressed to a government agency required to make a decision *and* if a true statement (as contrasted with the false one), would have had a natural tendency to influence the agency's decision. Proof of materiality must necessarily include proof of "what decision [] the agency [was] trying to make." And a statement that is material in isolation, when viewed in context, may not be. Application of these legal principles leads to the conclusion that the government failed to prove the materiality of any of the five purportedly false statements.

3

## Application of the Legal Principles to the Five Statements

The five purportedly false statements were made to two different entities. The first two (chronologically) were made to the United States Attorney's Office and the last three to the Probation Department. They are analyzed below in that order.

*Statements to the United States Attorney's Office*

1. Identified Portions of DOJ Financial Statement Form dated July 28, 2008;

2. Deposition Testimony given March 24, 2010 (False Statement Categories 3 and 4 in Gov't. Exhibit 3).

These statements are substantially true, and in any event are not intentionally false. But even assuming otherwise, applying the above-described standards requires the conclusion that neither is material. First, there was "no *evidence* adduced at trial that the [purported] misrepresentation could have, or did influence" a decision of the recipient of the statement. Rodriguez, 140 F. 3d at 168. That is, the government made no "factual evidentiary showing" of materiality. *United States v. Abadi*, 706 F.2d at 180. Second, the government never identified "what decision [] the agency [was] trying to make," *United States v. Gaudin*, 515 U.S. at 512, much less proved that the unidentified decision was "a determination [that was] *required* to be made." *United States v. Rigas,* 490 F.3d at 234, *Weinstock v. United States*, 231 F.2d at 701. Indeed, at the time Mr. Kestenbaum submitted the 2008 statement, he had already been sentenced and the Department of Justice was not, in any meaningful sense of the word, acting as a "decision-making body" vis-à-vis Mr. Kestenbaum, *see Kungys v. United States*, 485 U.S. at 770.

Even if these fatal omissions in the proof could be assumed away, the government offered no evidence or explanation of "what *would have ensued* from official knowledge of the misrepresented fact". *Id*. at 771. That is, the government failed to answer, with evidence, the

4

question of what "decision" of the government's would "predictably" have been "influenced" if, to use the example of purported false statement #4, Mr. Kestenbaum had testified that he did not dine with John Lieberman on some or all of the eight occasions reflected in BMAW's expense logs. The notion that if a few meals billed to BMAW in 2008 and early 2009 did not have a valid purpose, this would, in 2010, have had a "natural tendency to influence" the government's decision whether to make a motion to increase restitution is not only unproven, but dubious. Indeed, during the trial, the Court agreed that the accuracy of BMAW records regarding reimbursed employee meals, even in 2011, is "not a major point." Trial Transcript at 431.

    The kind of information that might genuinely have had a "natural tendency" to influence a government decision whether to make a motion is quite different: new information about Mr. Kestenbaum's wealth and income of a kind previously unknown to the government and strongly supportive of a greater ability to afford significantly higher restitution payments. But there was no new important information of that kind obscured by any purportedly false statements. *None* of the five purportedly false statements include so much as a single representation about Mr. Kestenbaum's wealth. And to the extent Mr. Kestenbaum made statements about his income, the only statements about income alleged to be false relate to two very atypical months (MSR reports to Probation in December, 2010 and January, 2011). Importantly, the government does not accuse Mr. Kestenbaum of falsehoods in any of the other 40 or so MSR reports for the more typical months – in which Mr. Kestenbaum correctly reported his salary of more than $8,000 per month.

    Finally, the notion that answers to the questions asked in the 2008 Financial Statement about income earned or financial help received *from others* would have been material to the government's decision whether to seek higher monthly restitution is also unsupportable. The

5

idea that, *if* Mr. Kestenbaum had reported on the 2008 form that in the previous six years he received aid from family and non-salary financial support from BMAW, a government decision to make a motion for increased restitution *"would have ensued"* at that time, is nonsensical, given that before the government received the 2008 form, it already knew the facts that it claims Mr. Kestenbaum omitted in the 2008 form. *See, e.g.*, Mr. Kestenbaum's Statement to Probation as reported in paragraph 95 of the Presentence Investigation Report ("Per the defendant, his parents and parents-in-law assist with the family's monthly finances"); Sentencing Minutes at 9 ("the Kestenbaum family live largely as a result of the generosity of family members who help them pay *their rent primarily*" (emphasis added); Question 14 of Mr. Kestenbaum's *2006 Financial Statement* (Mr. Kestenbaum responded that "the company pays expenses as incur[red]" in response to the question "how often are *you* paid"?). In other words, to *assume* that the information about "support from others" not included in the 2008 statement would have been material, would violate the legal principle that the context of a purported false statement not be ignored when analyzing materiality. *See Rigas* at 231 (claims of materiality must be considered "in the context in which [the purported misrepresentations] were made."). The context here is that the government already had the information it claims was left out of the form, and therefore its omission was not "predictably" material to any decision it might have made. Finally, the notion that *Vivian* Kestenbaum's salary in the single month of July, 2008, "would have" predictably influenced the government's decision to make a motion also ignores what the Court said at sentencing. The factors the Court said it might consider as possibly supporting a future increase in the payments *all* had to do with Mr. Kestenbaum's own salary and *none* included income earned by or support received from other family members. *See* Sentencing Minutes at 11 and 29 (Court explaining that if Mr. Kestenbaum were drawing a salary, it would "say that some

6

percentage of *his* salary should be paid to restitution" and that "he [Mr. Kestenbaum] needs to be earning money so that he can [pay restitution]").

In sum, for a plethora of reasons, none of the statements Mr. Kestenbaum made to the United States Attorney's Office, as set forth in purported false statement categories 3 and 4 (*see* Gov. Exhibit 3), are material.

*Statements to the Probation Department*

1. Portions of Mr. Kestenbaum's December, 2010 MSR;

2. Portions of Mr. Kestenbaum's January, 2011 MSR;

3. Mr. Kestenbaum's Conversation with the Probation Officer on December 23, 2011 in which he purportedly said he had not been "dipping" to pay "personal expenses." (False Statement Categories 1, 2 and 5 in Gov't. Exhibit 3).

Like Mr. Kestenbaum's two statements to the United States Attorney's Office, these statements to the Probation Department are substantially true and certainly are not intentionally false. But again, even assuming otherwise, they are assuredly not material. First, there was "no *evidence* adduced at trial that the [purported] misrepresentation[s] could have, or did influence" a decision of the recipient – the Probation Department. *See Rodriguez*, 140 F. 3d at 168. That is, the Probation Department made no "factual evidentiary showing" of materiality. *United States v. Abadi*, 706 F.2d at 180. The Probation Officer who filed the Violation Report testified, but she did *not* say that the Department's decision to file the Report, or to do anything else, was influenced by these particular statements. These particular statements did not even get so much as a mention in the Department's 20-plus-page Violation Report. The notion that these particular statements were important to the Probation Department's decision of whether or not to bring violation charges cannot be squared with the omission of these statements from the 20-page Violation Report. Indeed, the Report is largely devoted to regurgitating the claim in the Civil

7

Division's now abandoned motion that Mr. Kestenbaum secretly owns BMAW. In any event, the lengthy Report never mentions the purportedly false statements to Probation that, two weeks before trial, were suddenly proffered by the government in its bill of particulars as *the* basis of the false statements charge – the December, 2010 MSR, the January, 2011 MSR or the December 23, 2011 "dipping" comment. Lest there be any doubt that these statements were nowhere in the mix when the Department was deciding whether to bring violation charges, the Report eliminates that doubt by failing to include any of the charged statements as part of the 10 lengthy exhibits attached to the Report. In short, the government proffered no evidence in support of the notion that the alleged falsehoods in these three particular statements were "predictably capable" of having any real influence on any decision made or considered by the Department. The evidence of what the Probation Department actually did consider influential to its own decision – as set forth in great detail in its Report – belies any such notion.

As described above, the false statements charge required the government to identify and prove "what decision [] the agency [was] trying to make," *United States v. Gaudin*, 515 U.S. at 512, which it failed to do. In any event, the only determination the Probation Department could have been "trying to make" by requiring the submission of the financial information requested in the MSRs, was the "determination" the Court specifically asked the Department to make at sentencing. "I do think that a more detailed analysis of the defendant's finances needs to be made *so that a determination as to what [restitution] he truly can afford* will be available to the Probation Department and to the Court." Sentencing Minutes at 29 (emphasis added).

There is no other sensible explanation for what decision the "agency [was] trying to make" here. *See United States v. Gaudin*, 515 U.S. at 512. The Probation Department does not seek information about a supervisee's finances, for the circular purpose of deciding whether he is

8

telling the truth to the Department about that or any other subject. A supervisee is not asked to report his income, for the purpose of deciding whether he will remain on Probation, as his probationary status does not depend on his income. In the same vein, the Treasury Department requires the submission of tax forms, not for the purpose of seeing whether the taxpayer will make false statements about his income, but rather, for the purpose of calculating and collecting the tax. While a supervisee is required to tell the truth to his Probation Officer on his MSR and a taxpayer is required not to lie on his tax return, these requirements do not render everything said by the supervisee or the taxpayer on the form material. Any contrary conclusion would render the materiality element of § 1001 a nullity and violate the legal principle that requires a focus on the specific purpose for which the statement, alleged to be false, has been sought by the government agency in question. In other words, false statements by a supervisee to the Probation Department are not material, simply because the individual is under supervision, as that method of analysis lacks the required focus on the decision the agency was actually trying to make.

There are yet more reasons why the purportedly incorrect parts of these statements to the Probation Department cannot be considered material. As for the two MSRs, the government failed to offer any evidence that these reports were in any way representative of the vastly larger body of financial information Mr. Kestenbaum reported to Probation over the course of his supervision. That is, during the nearly three years between July, 2008, when Mr. Kestenbaum began to receive a salary from BMAW of above $8,000 per month, until March, 2011, when that salary was suspended, Mr. Kestenbaum reported gross wages above $8,000 in virtually every month *other than* December, 2010 and January, 2011 – the two aberrant months upon which the government places the weight of its entire claim that Mr. Kestenbaum made false written

9

statements to Probation. The government's artificial selection of these two highly atypical months raises the question whether, if Mr. Kestenbaum had reported $8,000 plus of income for these two months, rather than the lower amounts, this would have had "a natural tendency" to "affect" a decision by the Probation Department to seek increased monthly restitution. But to pose this question is to answer it. It makes no sense that the Probation Department would have sought to cause an increase in Mr. Kestenbaum's regularly restitution amount, if only it knew that his salary, in December, 2010 and January, 2011, was the same salary the Department already knew Mr. Kestenbaum had regularly received since mid-2008. Thus, the failure to report wages in December, 2010 and January, 2011, similar to the report for the other months, was not material because it would not predictably changed any decision by the Probation Department and the government failed to prove otherwise.

Moreover, Mr. Kestenbaum's failure to include the payment of his rent with money that came from his mother, in the cash flow or earnings numbers, was not material to any decision the Department would make because he told his Probation Officer about this support from his mother. The government's own description, in its Exhibit 3, of what Mr. Kestenbaum said on the December, 2010 MSR is "$6200 rent paid by mother."

Finally, Mr. Kestenbaum's failure to characterize such things as health care and legal expense reimbursement as income, on these two MSRs – or in his December 23, 2011 conversation with the Probation Officer – was not a "material" false statement, for various reasons. It was no secret to anybody by December, 2010/January, 2011 that BMAW reimbursed Mr. Kestenbaum for legal expenses and health care expenses. Mr. Kestenbaum and others testified to these facts at the 2010 depositions. Because these reimbursements to Mr. Kestenbaum had been disclosed and were not secret, the hypothetical reporting of the

reimbursements, again, on the MSR, whether as "wages" or anything else, could not predictably have changed any decision the Department might otherwise have made about Mr. Kestenbaum. And moreover, because the amounts BMAW paid for Mr. Kestenbaum's health care and legal expenses were not available to Mr. Kestenbaum to use to pay his restitution, the fact of the company's payment of health care and legal expenses was not material to Mr. Kestenbaum's ability to pay increased restitution payments.

## Conclusion

In conclusion, for many reasons, none of the purported falsities in the statements identified by the government were truly material to any decision being considered by the government or the Probation Department. The statements may therefore not be the basis of a claim that Mr. Kestenbaum violated his Probation by making materially false statements. The charge should be dismissed or rejected.

Dated: New York, New York
      August 6, 2012

                                      Respectfully submitted,

                                      CARTER LEDYARD & MILBURN, LLP

By: _____
Alan S. Lewis
Two Wall Street
New York, New York 10005
(212) 732-3200

*Attorneys for Joshua Kestenbaum*