UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
UNITED STATES OF AMERICA

    -against-                                                             Criminal Docket
                                                                                           No. CR-04-821 (NG)

JOSHUA KESTENBAUM,

                Defendant.
---------------------------------------------------X

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MEMORANDUM ON MATERIALITY IN THE CONTEXT OF 18 U.S.C. SECTION 1001

      The United States, by its undersigned attorneys, submits this memorandum in response to defendant Joshua Kestenbaum's brief regarding materiality in the context of 18 U.S.C. § 1001, and the defendant's motion to dismiss charge 1, the false statements charge of the violation proceeding in the above-referenced case (Defendant's "Materiality Brief"). As set forth below, the United States proved by a preponderance of the evidence that the defendant made one or more material false statements, as charged, and thereby violated the terms of his probation. Thus, the defendant's motion to dismiss charge 1 should be denied.

### MATERIALITY UNDER 18 U.S.C. § 1001

      In the Second Circuit, "a false statement [under 18 U.S.C. § 1001] is material if it tends to or is capable of influencing the decision-making body to which it was addressed", or if it is "capable of distracting government investigators' attention away from" an investigation. United States v. Stewart, 433 F.3d. 273, 318 (2d Cir. 2006); see also United States v. Adekanbi, 675 F.3d 178, 183 (2d Cir. March 29, 2012).

      Contrary to the defendant's unsupported assertions, the government is not required to

introduce testimony or other evidence proving that a false statement was capable of influencing a *specific* government decision in order to prove materiality[1]. See United States v. McBane, 433 F.3d 344, 351 (3rd Cir. 2005) ("Though we acknowledge that a false statement that actually affects or is capable of affecting a *specific* decision by an agency makes for an easier materiality determination, we agree with the Government that both the language of the materiality standard and the decisions applying the standard require only that the false statement at issue be of a type capable of influencing a *reasonable* decisionmaker."); see also United States v. Moore, 612 F.3d 698, 701 (D.C. Cir. 2010) ("We now join the other circuits in holding a statement is material if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed."); United States v. Calhoun, 97 F.3d 518, 530 (11th Cir. 1996) ("To satisfy the element of materiality, it is enough if the statements had a 'natural tendency to influence, or be capable of affecting or influencing a government function.'") (citations omitted).

Indeed, as recently recognized by the Second Circuit, a court may determine that a particular false statement is capable of influencing or distracting the government "as a matter of common sense." In United States v. Adekanbi, 675 F.3d 178 (2d Cir. March 29, 2012), the defendant appealed his criminal conviction of conspiring to distribute heroin, aggravated identity theft, and making false statements under 18 U.S.C. §1001. The evidence introduced by the government at trial showed that the defendant had lied about his identity during a proffer. The

---

[1] The defendant's reliance on United States v. Rodriguez, 140 F.3d 163, 168 (2d Cir. 1988), and United States v. Rigas, 490 F.3d 208, 234 (2d Cir. 2007) for this proposition is misplaced. Both of these decisions dealt with materiality in the context of bank fraud convictions pursuant to 18 U.S.C. § 1344.

2

defendant's appeal was based, in part, on his argument that the government introduced insufficient evidence at trial to prove that his false statements were material. In affirming the district court's conviction, the Second Circuit found that, even without the introduction of any testimony supporting that the false statements were capable of influencing or distracting government officials, the jury could have found that the defendant's false statements about his identity were capable of influencing or distracting the government "as a matter of common sense", since lying about one's identity can impede a government's investigation or prosecution of crimes.

As further shown below, the government met its burden with respect to all five false statement categories at issue in the violation hearing. There was more than sufficient evidence introduced at trial to support a finding that each of the false statements at issue had a tendency to or were capable of influencing the decision-making body to which they were addressed, i.e., the Probation Department or the U.S. Attorney's Office, or distracting the government away from an investigation.

A.  **The False Statements Made By the Defendant to the United States Attorney's Office Were Material**

At sentencing for the defendant's underlying conviction of bank fraud, the Court ordered the defendant to pay $11,159,447 in restitution to Capital Factors. While the Court ordered the defendant to make payments in the amount of $2,500 per month towards his $11,159,447 restitution judgment, the Court noted that "a more detailed analysis of the defendant's finances needs to be made so that a determination as to what he truly can afford will be available to the Probation Department and to the Court." June 12, 2008, Sentencing Transcript, pp. 26-7.

The United States Attorney General is charged with the collection of restitution

judgments. See 18 U.S.C. § 3612(c). Further, the United States is authorized to notify the court of a material change in the defendant's financial circumstances which may warrant an adjustment of the defendant's court-ordered payment schedule or immediate payment of the restitution judgment. See 18 U.S.C. § 3664(k).

Since sentencing, the U.S. Attorney's Office has been actively investigating the defendant's finances in connection with its responsibility to collect his restitution judgment, as evidenced by the six deposition transcripts introduced into evidence at the violation hearing, the financial records and other documents subpoenaed by the government and introduced into evidence at the violation hearing, and the testimony of Financial Litigation Unit Investigator Geoffrey Fig[2].

As set forth in the government's letter of June 21, 2012 (Docket # 83), the defendant was charged with making two categories of false statements to the U.S. Attorney's Office. The first of the two categories was that the defendant falsely reported on his July 28, 2008 financial statement (1) that the only financial support from any source or person he had received in the last six years was from his father; (2) that his monthly take home pay was $2,614.00; (3) that his wife's total monthly income was $2,400, comprised solely of her income from Waldman Publishing, and (4) that there were no payments or obligations made on his behalf by others. The government introduced evidence at the violation hearing, as summarized in Government Exhibit 3, which proved by a preponderance of the evidence that the defendant's statements were false.

---

[2] At the violation hearing, Mr. Fig testified that his duties included "assist[ing] the United States Attorneys in the unit and review[ing] financial documents, locating assets, interviewing witnesses, all with regard to enforcing restitution." Transcript of Violation Hearing, p. 89.

The evidence showed that the defendant had received significant financial support from Bake Me A Wish ("BMAW") and his mother in the six years prior to July 28, 2008. The evidence also showed that in July 2008, the defendant had received payments from BMAW totaling $8,353.36; that the defendant had caused BMAW to issue a payroll check to his wife, which was signed by the defendant, in the amount of $3,035.94; and that BMAW had made payments totaling $3,933 on the defendant's behalf to various doctors, a lawyer and a rabbi.

The second category of false statements made to the U.S. Attorney's Office was that the defendant testified at his 2010 deposition that he had documentation of all his meals claimed as BMAW business expenses, which set forth the dates and individuals with whom he conducted business at those meals. The evidence submitted by the government at the violation hearing established by a preponderance of the evidence that the documentation that the defendant submitted to the government-- the BMAW debit account card log-- contained materially false entries concerning alleged meals and drinks with the defendant's tax preparer with whom the defendant had never been out, and taxi rides for fictitious cake deliveries.

The defendant incredulously argues that both of these false statements could not have influenced the U.S. Attorney's Office to file a motion to increase the defendant's restitution payments. Yet, the facts underlying both of these false statements did just that, as evidenced by the government's detailed discussion of the facts underlying these false statements in the government's memoranda filed in support of its March 10, 2011 motion to increase the defendant's restitution payments. See Docket Entry #37 (motion to increase restitution payments), pp. 2, 23, 28, 30-32; Docket Entry #49 (reply in support of government's motion), pp. 2-4 (under heading "Kestenbaum Materially Misstated His Economic Circumstances in His

Financial Statements Submitted to the Government Both Before and After Sentencing").

The defendant baselessly asserts that his wife's income, and other financial support received from family members, could not be material to the government's decision to file a restitution motion. As the Second Circuit recognized in United States v. Corbett, 357 F. 3d 194, 196 (2004), a defendant's total household income, including his spouse's income, may be considered in determining the amount of a defendant's income that is necessary to meet family and household expenses in order to determine the defendant's ability to pay his restitution liability. See also United States v. Brill, 2007 U.S. Dist. LEXIS 56225, *18 (E.D.N.Y. 2007). Similarly, as the Court noted at the violation hearing in this case, "[i]f expenses that [the defendant] has are paid by others, then his needs to pay his own expenses are reduced." Transcript of Violation Hearing, p. 29.

Defendant's contention that his material misrepresentations about his financial support should be excused because the government "already knew the facts it claims Mr. Kestenbaum omitted in the 2008 form" (Defendant's Materiality Brief, p. 6) also lacks merit. Whether the government believed the defendant's false statements to be true has no bearing on whether they were material. See United States v. Foxworth, 334 Fed. Appx. 363 (2d Cir. 2009) ("That the FBI knew that the statements were false when they were made is irrelevant to their materiality."); United States v. Rogers, 118 F.3d 466, 472 (6th Cir. 1997) (rejecting argument that false statements made to government agent were not material because agent knew the statements were false); United States v. Simmonds, 2009 U.S. Dist. LEXIS 104015 (N.D.N.Y. November 9, 2009) ("The statute doesn't require that the probation officer actually be deceived or influenced by the Defendant's statement."); cf. United States v. Stewart, 433 F.3d 273 (2d Cir. 2006) ("We

6

agree with the decisions from other circuits that have concluded that there is no safe harbor for recantation or correction of a prior false statement that violates section 1001.")

Lastly, the defendant's argument focuses solely on a misstatement of the government's burden of proof with respect to materiality, i.e., whether the government proved that the false statements at issue were capable of influencing the specific decision of whether to file a motion to increase the defendant's restitution payments. While it is the government's position that it did prove that the subject false statements influenced that specific decision, it was not required to do so. The United States was only required to submit sufficient evidence to prove that the subject false statements were capable of influencing the U.S. Attorney's Office's decision-making, or that the false statements were capable of distracting the U.S. Attorney's Office from an investigation. See United States v. Stewart, 433 F.3d at 318. The United States introduced more than sufficient evidence to support a finding that the false statements were material inasmuch as they were capable of distracting the U.S. Attorney's Office from its investigation of the defendant's finances in connection with collecting his restitution judgment.

**B.   The False Statements Made By the Defendant to the Probation Department Were Material**

As set forth in the government's letter of June 21, 2012 (Docket # 83), the defendant was charged with making three categories of false statements to his U.S. Probation Officer. The first category of false statements relate to the defendant's December 2010 Monthly Supervision Report ("MSR"). The government submitted evidence at the violation hearing, as summarized in Government Exhibit 3, that, among other things, showed that the defendant grossly misreported his monthly cash inflows (reported as $3,000, while his bank statements reveal he had received more than $17,000 in electronic transfers and checks from BMAW), and cash outflows (not

reported on the MSR, while his bank statements show he electronically transferred $7,100 to BMAW).

The second category of false statements relate to the defendant's January 2011 MSR. The government introduced evidence at the violation hearing, as summarized in Government Exhibit 3, that, among other things, substantiated that the defendant falsely reported his total cash inflows as $2,916.41, when he received payments that month from BMAW totaling $13,240.

Finally, the last category of false statements made to Probation was defendant's statement to United States Probation Officer Carrie Borona that he had not been "dipping" into the BMAW business accounts since he was sentenced, contrary to substantial evidence introduced at the violation hearing and the defendant's testimony at his deposition.

As Probation Officer Carrie Borona testified at the violation hearing, the defendant's judgment in this case provides that as a standard condition of probation, he is required to submit a truthful and complete monthly supervision report to the Probation Department within the first five days of each month.  Transcript of Violation Hearing, p. 74.  The judgment also requires the defendant to answer all of his probation officer's questions truthfully and to follow her instructions, and to provide full financial disclosure to the Probation Department during his term of probation.  Id.

The defendant asserts in his Materiality Brief that the *only* decision that the subject false statements made by the defendant to the Probation Department could have influenced was the Probation Department's decision whether to seek increased restitution payments from the defendant.  In other words, in a case where the Court has not directed the Probation Department to investigate a defendant's finances, the defendant is free to make as many false statements as he

wishes to his probation officer, or on his MSRs, as none of them could be material.  This is nonsensical and fails to acknowledge the fact that the subject false statements may be deemed material if the Court finds that they were capable of influencing any reasonable decision of the Probation Department, or, of distracting the Probation Department from an investigation.  See United States v. Stewart, 433 F.3d at 318; United States v. McBane, 433 F.3d at 351.

     False statements made to the Probation Department are indeed subject to prosecution.  In United States v. Inserra, 34 F.3d 83 (2d Cir. 1994), the Second Circuit upheld a district court's conviction of a defendant for making false statements on three MSRs submitted to the Probation Department during supervision.  The defendant falsely stated that he did not own or drive any vehicles on the subject MSRs.  The court noted that given the "unrestricted interpretation and broad applicability of section 1001, it appears obvious to us that false statements made to a United States Probation Office are subject to prosecution under the provisions of section 1001." Id. at 88.

     In a case involving facts remarkably similar to the instant case, United States v. Taintor, 2003 U.S. Dist. LEXIS 685 (N.D.N.Y. January 17, 2003), the district court for the Northern District of New York found a defendant to be in violation of the terms of his probation for making a false statement concerning his cash inflows on an MSR submitted to the Probation Department during supervision.  The government introduced evidence at a violation hearing that the defendant was subject to conditions of probation requiring him to answer Probation's inquiries truthfully, to provide his probation officer with financial information as requested, to submit MSR's, and to pay tax liabilities to the IRS.  Id. at *6-*7.  Based on this evidence, the court concluded that the defendant's false statement concerning his cash inflows was material.

Id. at *10.

The fact that the subject false statements were not specified in the Probation Department's violation report does not render them not material. The question before the Court is whether these false statements could have been capable of influencing a decision of the Probation Department or distracting it from an investigation. Nor does the fact that the defendant previously testified about his legal and medical expenses at a deposition -- which the Probation Department did not attend - - aid the defendant in his defense.

Lastly, the defendant's assertion that the false statements on the two MSRs at issue were an aberration from his purportedly truthful reporting on all of his other MSRs is unsupported by the evidence, and irrelevant. The defendant did not introduce evidence at the violation hearing establishing that his financial reporting on the remainder of his MSRs was truthful, nor would that have shielded him from criminal liability for the subject false statements.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the defendant's motion to dismiss the false statements charge be denied.

          Respectfully submitted,

          LORETTA E. LYNCH
          United States Attorney

By:   s/Bonni Perlin
      Bonni Perlin
      Ilene Jaroslaw
      Assistant U.S. Attorneys