UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

JOSHUA KESTENBAUM,

Defendant.

------------------------------------------------------------X

Cr. No. 04-821 (NG)

Violation of Probation Proceeding

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**REGARDING THE MATERIALITY ELEMENT OF 18 U.S.C. § 1001**

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732-3200

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........ ii

The Statements to the United States Attorney's Office ........ 2

The Statements to the Probation Department ........ 9

CONCLUSION ........ 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Kungys v. United States*,
485 U.S. 759 (1988) ........................................ 1, 6, 8

*United States v. Abrahem*,
678 F. 3d 370 (5th Cir. 2012) ........................................ 6

*United States v. Adekanabi*,
675 F.3d 178 (2d Cir. 2012) ........................................ 5

*United States v. Bronston*,
409 U.S. 352 (1973) ........................................ 11

*United States v. Inserra*,
34 F.3d 83 (2d Cir. 1994) ........................................ 10

*United States v. Mandanici*,
729 F.2d 914 (2d Cir. 1984) ........................................ 7

*United States v. McBane*,
433 F.2d 344 (3d Cir. 2005) ........................................ 6

*United States v. Moore*,
612 F. 3d 698 (D.C. Cir. 2010) ........................................ 6

*United States v. Taintor*,
2003 WL 144811 (N.D.N.Y. 2003) ........................................ 10

*Weinstock v. United States*,
231 F.2d 699 (D.C. Cir. 1956) ........................................ 1, 8

**STATUTES**

18 U.S.C. § 1001 ........................................ 1, 7, 8, 10

Mr. Kestenbaum's August 6 memorandum regarding the materiality element of 18 U.S.C. § 1001 applied the holdings of the pertinent Supreme Court cases [chiefly *Kungys* and *Gaudin*] and some of the Circuit Court cases whose reasoning the Supreme Court relied directly upon [chiefly *Weinstock* and *Abadi*] to the facts of this case. The government never once acknowledges those cases. Instead, it cobbles together an argument based on the application of a completely different set of cases (all from circuit and district courts) to a description of the facts that the evidence does not support. This memorandum challenges both the government's description of the facts in its August 9 memorandum and the legal conclusions it would draw from the newly identified cases. As explained in more detail below, the government has: (a) not convincingly explained why its failure to offer even a scintilla of evidence of materiality at the hearing should not result in the dismissal or rejection of the charge; (b) invented a "common sense" exception to the evidentiary requirement that does not exist; (c) failed to consider the purportedly false statements in the context of other statements made by Mr. Kestenbaum to the government and Probation; and (d) ultimately arrived at a conclusion that rests on a mis-description of the pertinent facts.

As important as these points are, the larger picture may be even more important. Ultimately, the idea that Mr. Kestenbaum, through misrepresentation, hid from the government and Probation his purported ability to pay more than he has paid is silly because he has no such ability. He has no secret assets or sources of income. The government, after having commenced these proceedings by making the big picture and potentially consequential claim, in its civil division's motion, that Mr. Kestenbaum was the secret owner of a highly profitable company, ultimately abandoned that claim and substituted the very technical and small picture notion that Mr. Kestenbaum's well and frequently disclosed support from family members and receipt of

well disclosed benefits, such as health care and legal reimbursement, should have been characterized differently by Mr. Kestenbaum in the forms and interviews in which he nevertheless disclosed those things. Having elected to replace a big picture case with minutiae, it was particularly essential here that the government prove the materiality of the few statements it relied upon. It has failed to do so.

**The Statements to the United States Attorney's Office**

There are five such statements identified by the government as purportedly false in its bill of particulars – one isolated section of deposition testimony and four things culled by the government from Mr. Kestenbaum's 30 page, July 2008 financial form. Of these, only *one* is a statement by Mr. Kestenbaum about his own income.[1] We focus there because Mr. Kestenbaum's statements about his own pay have the greatest *potential* to be material, as compared to other statements relating to such things as the quality of BMAW's expense log records [Statement 4] or income earned by others not directly available to Mr. Kestenbaum to use toward restitution [other parts of Statement 3].

The statement at issue is the response to question 14(b) of a financial form that asked Mr. Kestenbaum "how much are you paid per pay period" (also asking him to attach "earnings" statements). Mr. Kestenbaum reported $2,614.14 in take home pay, net of both restitution and taxes. The materiality of this purported inaccuracy, like any other, cannot be analyzed without first correctly *isolating* the inaccuracy. Accordingly, an understanding of the form and the answer to the particular question is necessary to analyze both its purported inaccuracy and materiality. Notably, the government does *not* ask individuals to fill out this form regularly, much less as often as monthly. Thus, the form asks *generally* about pay per pay period and

[1] Three of the statements are about support received from income or earned by others, and one is a statement about BMAW's record keeping vis-à-vis meal expenses.

contains no questions about pay during a specific month or other particular pay period. That kind of reporting, about specific monthly wages, is made to the Probation Department, on a different form – the Monthly Supervision Report ("MSR").

Accordingly, for the answer to the question about gross pay, deductions and resulting net pay given on this form to be inaccurate, it must be inaccurate regarding the reporter's typical or regular income, as opposed to a less than perfect picture of a particular month. This point is not only obvious, but also critical, given the government's failure to present *any* evidence that the information was inaccurate as to Mr. Kestenbaum's typical, regular gross or net pay, which it surely was not.

Even the government's claims about what Mr. Kestenbaum purportedly received as net take home "pay" during the month of July, 2008, are incorrect. For example, it seems to claim that Mr. Kestenbaum had approximately $5,000 in additional, unreported, net take home pay in the form of checks received from BMAW in July, 2008 (*see* Gov't. Ex. 3, reporting a check total of $7,653.36). But the government ignores two critical things in making this claim that undermine the notion that this additional $5,000 was truly both net to Mr. Kestenbaum and supposedly unreported. First, one of these checks was for $2,500 and was used toward Mr. Kestenbaum's restitution. Second, another check for a similar amount was reported by Mr. Kestenbaum the following month to Probation. Specifically, on his MSR dated September 2, 2008 (attached as Exhibit A), Mr. Kestenbaum reported this income, purportedly undisclosed on the July 28 financial form, by reporting his net monthly earnings from employment as $5,114.40 - $2,500 more than the $2,614 he typically received and reported in nearly every other month.

Similarly misleading about the government's claim of falsity here is its implication that a group of payments by BMAW totaling $3,933 should have been reported as part of Mr.

Kestenbaum's regular monthly take home pay. But Mr. Kestenbaum did not get to "take home" these amounts, which the company paid directly, mostly for health care and legal expenses. Moreover, they were not regular monthly amounts and did not logically belong in the answer to question 14(b) of the form, seeking disclosure of the regular monthly amount. And finally, because the money BMAW paid directly to doctors and lawyers was not available to Mr. Kestenbaum to use toward his restitution, these payments were not material to assessing the amount of restitution Mr. Kestenbaum could reasonably pay on a monthly basis.

Once the government's faulty analysis of the information sought in question 14(b) is exposed, there is very little left about the answer to that question that can be seen as inaccurate. Had the government called a witness to testify to the purported materiality of question 14(b), that witness's testimony could have been subjected to cross examination that exposed how the government's assumption of materiality was inextricably intertwined with its quite debatable assumptions about the ways in which the statement was purportedly inaccurate.

Much the same can be observed about the other statements to the government. Had, for example, the government called a witness to offer evidence of the purported materiality of the sliver of Mr. Kestenbaum's deposition testimony at issue, this testimony would have been subjected to cross-examination. The notion that Mr. Kestenbaum's testimonial description of how BMAW kept track of meal expenses in 2008 [purported false statement 4] was material to the government's analysis of whether to make a motion to increase restitution payments in 2010 is ridiculous, and would have been exposed as such on cross examination if the government had not assumed the materiality element and instead tried to prove it.

Having presented no evidence of materiality, the government seeks to divert the Court's attention from that critical defect, such as by arguing that its mention of these statements in its

44-page motion to increase restitution somehow renders "incredulous[]" the argument that these statements were not material (Gov't. Mem. at 5). But the mere mention of a fact in a pleading does not mean that the fact was "predictably capable" of causing the party who filed the pleading to do so. In short, while the *failure* to mention a fact at all in a lengthy pleading [e.g., Probation's failure to mention in its Report any of the three purportedly false statements made to Probation] is persuasive evidence that the omitted fact was not material to the decision to bring the case or file the pleading in question, the converse is not true: simply mentioning a fact in a pleading does mean that the fact was capable of influencing the decision to file that pleading. Indeed, here, the government's motion to increase restitution payments mentioned many facts, such as the entire sub-section devoted to Mr. Kestenbaum use of the name "Josh Kaye" in business, that were plainly not even considered as part of its decision whether to make a motion for increased restitution.

None of the cases cited by the government abandon the profoundly well-established principle that, like all elements of all offenses, materiality must be proved by the submission of evidence in the fact finding process. *United States v. Adekanabi*, 675 F.3d 178 (2d Cir. 2012), cited by the government for the notion that an intonation of "common sense" replaces the need to elicit evidence, supports no such conclusion. *Adekanabi* involved a conviction for false statements made by a defendant during a safety-valve proffer. While the Second Circuit described the materiality of these statements as common sense, it did so while also noting that the government had introduced testimony to prove the materiality of the statements made during the proffer. That is, the government not only "introduced testimony" regarding "the purpose of a safety-valve proffer," but also offered evidence about how "truthfulness and criminal history are elements to be considered in determining whether a defendant is safety-valve eligible." *Id.* at

183. Furthermore, by explaining that where "the connection between the agency to which the statement is made and the agency to which the statement is alleged to be material is tenuous, the government must *do more* to prove materiality," the Court implicitly concluded that even where the relationship is not tenuous, the government must still do something to prove materiality. Here, it simply offered no evidence to prove the materiality element.

Rather than contend with its failure to offer such proof, the government focuses on the tangential question of how specifically the government decision in question must be defined to satisfy materiality. But even there, the cases cited by the government, such as *United States v. Moore*, 612 F. 3d 698, 701 (D.C. Cir. 2010) undermine its position that it can be excused for failing to offer evidence of materiality.[2] In *Moore,* the D.C. Court approvingly cited the holding of the Sixth Circuit that "the government must present at least some evidence *showing how* the false statement in question was capable of influencing federal functioning." *Id.* at 701. Here, the government presented no evidence "showing how" the false statements in question were capable of influencing federal functioning.

Even if there were ever a case in which it were appropriate to forgive the ordinary requirement that the government present evidence of materiality, this is surely not it. From the word "go," Mr. Kestenbaum has repeatedly emphasized his argument that the statements at issue are trivial and the corresponding importance of the government to properly plead, and then prove, the purported materiality. For example, in his April 13 motion for a bill of particulars, Mr. Kestenbaum argued:

[2] While the government's argument that materiality is satisfied by evidence of a natural tendency to influence mere "agency function," is supported by some decisions of other circuits, such as *United States v. McBane,* 433 F.2d 344 (3d Cir. 2005), this principle has not been endorsed by the Second Circuit. Moreover, the notion that influence on "agency function" will suffice is questionable and has been criticized as inconsistent with the Supreme Court's definition of materiality in *Kungys* and command in *Gaudin* that requires identification of "what decision was the agency trying to make." *See United States v. Abrahem*, 678 F. 3d 370, 379 (5th Cir. 2012) (Jolly, J., dissenting) (criticizing *McBane's* "stray interpretation of *Kungys*").

> *notice of the "basic facts"* giving rise to a § 1001(a)(2) violation *must surely include* identification of (a) the specific statements made, (b) the pertinent portion or portions of the statement(s) alleged to be false, and (c) *the circumstances that render the purported falsity "material"*. . . .
>
> [that] [n]owhere does the Violation Report identify specific portions of those statements alleged to be false or state what makes those portions (currently unidentified) "material". . . .
>
> [and that] the "basic facts" of which Mr. Kestenbaum must receive notice are those that the government will try to prove in support of each of the statute's elements.[3]

Kestenbaum April 13, 2012 Mem. at 11.

Given how insistently Mr. Kestenbaum has pointed to the government's failure to plead and prove materiality in this case, allowing the government to escape its burden to prove materiality here would deprive Mr. Kestenbaum of due process.

Finally, the government is incorrect when it implies that the Court may ignore, as part of the context of the statements, other concededly truthful information the government received from Mr. Kestenbaum about the same subjects of the purportedly incorrect statements. In this vein, the government mischaracterizes Mr. Kestenbaum's materiality argument as "that the [government] knew that the statements were false when they were made," Gov't. Mem. at 6, quoting and applying the non-precedential decision in *United States v. Foxworth,* 334 Fed.Appx. 363 (2d Cir. 2009). To the contrary, Mr. Kestenbaum's argument is not that the government knew, for example, that his answer to question 82 was "false" when he failed to fill in the box

---

[3] While Mr. Kestenbaum's statements were *not* misleading, even if they had been, that would not suffice to prove the falsity element. "[A] defendant may not be convicted under § 1001 on the basis of a statement that is, although misleading, literally true." *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984). Thus, there is no evidentiary support for the government's argument that Mr. Kestenbaum's reporting of $0 in wages on the December, 2010 MSR was false, particularly in light of the un-contradicted testimony from Bryce Morrison that the money Mr. Kestenbaum received from BMAW in that month was a loan.

next to the tiny print that says "payments on obligations made on your behalf by others".[4] Rather, Mr. Kestenbaum's argument is that, because he told the government no fewer than three times before he filled out this particular form, that he had received support from others [his representation on the 2006 Department of Justice form that BMAW was paying his personal expenses, his statement, as reflected in the PSR, of his support from both his and Vivian's parents, and the statement of his counsel at sentencing regarding the significant support received from family members], that his answer to question 82 was not conceivably material to any decision the government might have made. In other words, all of Mr. Kestenbaum's prior statements about the same or similar subjects as question 82, render trivial his failure to complete the tiny box that is a part of question 82 on the 2008 form.[5]

The government's distinction of two second circuit cases, *Rigas* and *Rodriguez*, is unpersuasive. Yes, the false statements underlying the convictions in *Rigas* and *Rodriguez* were parts of fraud, rather than independent false statement allegations, but this is of no significance. The definition of materiality is no different in these two contexts, as reflected by the Second Circuit's reliance, in the fraud case of *Riga*, on the definition of materiality expressed in the leading false statement case of *Weinstock v. United States,* 231 F.2d 699, 701-02 (D.C. Cir. 1956). Not only did the *Rigas* court describe *Weinstock*'s explanation of materiality as "persuasive," but *Weinstock* was the *only* circuit court case cited approvingly more than once by the Supreme Court in support of its definition of materiality in *Kungys*. *See Kungys v. United States,* 485 U.S. 769-70 (1988). The government's failure to contend with, or even acknowledge the *Weinstock* court's detailed discussion of why context matters to the question of materiality

---

[4] A copy of the page containing question 82 is attached as Exhibit B.

[5] Nor, contrary to the government's misleading claim, does Mr. Kestenbaum argue that there is a "safe harbor for recantation or correction of a false statement that violates section 1001." Gov't. Mem. at 7. The government's reference to such an argument is a mystery, as the specific issue is whether the purportedly false statements were material, when considered in context, not whether false statements were "recanted."

[discussed in Mr. Kestenbaum's August 6 memorandum at 2-3] renders its argument, at 6-7, unworthy of further comment.

**The Statements to the Probation Department**

Setting up a straw man, the government mischaracterizes Mr. Kestenbaum's argument as that "where the Court has not directed the Probation Department to investigate a defendant's finances, the defendant is free to make as many false statements as he wishes to his probation officer." Gov't. Mem. at 8-9. Mr. Kestenbaum makes no such argument and does not contend that there is any general principle that makes false statements to Probation somehow not "subject to prosecution." Mr. Kestenbaum's actual argument, which the government largely evades, is that the government presented no evidence that the Probation Department so much as thought about the three purported false statements Mr. Kestenbaum made to Probation as part of its decision to do or evaluate anything – a conclusion supported by the total failure to once mention any of those three statements in its 20 page detailed violation report. Not only did the Probation Department not *bring* its case because of these purported false statements, it did not even consider them as in the mix. Logic strongly supports this conclusion because the two particular months that are the subjects of these two reports are indeed extraordinarily aberrant. Had the Probation Officer testified differently, she would have been subjected to cross-examination that would have exposed why the December, 2010 and January, 2011 MSRs are aberrant and not material to Mr. Kestenbaum's ability to afford a regular monthly payment of more or less than $2,500, but the government's failure to present any evidence about this element made it unnecessary for Mr. Kestenbaum to disprove what the government did not even claim. In short, the government's claim that the aberrant nature of these two MSRs is "unsupported by the

evidence" simply disguises its own fatal failure to offer, as the party with the burden of proof, any evidence at all on this subject.

The government citation of *United States v. Inserra*, 34 F.3d 83 (2d Cir. 1994) for the generalized notion of an "unrestricted and broad applicability of section 1001" is a red herring. It is plain from a reading of that decision that these words were used only to make a simple, uncontroversial point not at issue in this case – that the Probation Department is " a department or agency" of the government and that statements to the Probation Department are not exempt from prosecution under section 1001 as made in the course of the court's "adjudicative function." In that sense, and only in that sense, did the Second Circuit, in this pre-*Gaudin* decision, describe the statute as having "broad applicability."

Finally, *United States v. Taintor*, 2003 WL 144811 (N.D.N.Y.), an unreported opinion from another district upon which the government places great reliance (Gov't. Mem. at 9-10), lends the government's argument no aid. Apart from the fact that that "case" is not a decision, but rather a mere unreported recommendation of a magistrate, it also never grapples with any of the legal issues briefed here. *Taintor* is not authority for anything at issue, and says nothing to question the well-established principles that the government must actually prove the materiality element and that materiality is a case-specific question to be analyzed in the context of the unique facts of each case.

Finally, the government never contends with the problem that, at root, its forms ask ambiguous questions, leaving the assessment of such things as what qualifies as "earnings" or "wages," what amounts are part of the "gross" versus the "net," and whether "personal expenses" includes things that are also deductible by the company that pays for them, to the interpretation of each individual. The lack of precision of the questions – in the forms or when the Probation

Officer asked Mr. Kestenbaum about "dipping" for "personal expenses" – is the government's and Probation Department's fault, not Mr. Kestenbaum's. As the Supreme Court observed in the related context of a perjury prosecution, "[i]t does not matter that the unresponsive answer is stated in the affirmative, thereby implying the negative of the question actually posed, for again, by hypothesis, the examiner's awareness of unresponsiveness should lead him to press another question or reframe his initial question with greater precision. *Precise questioning is imperative as a predicate for the offense of perjury.*" *United States v. Bronston*, 409 U.S. 352, 362 (1973) (emphasis added).

## CONCLUSION

In conclusion, for many reasons, none of the purported falsities in the statements identified by the government were truly material to any decision being considered by the government or the Probation Department. The statements may therefore not be the basis of a claim that Mr. Kestenbaum violated his Probation by making materially false statements. The charge should be dismissed or rejected.

Dated: New York, New York
August 14, 2012

Respectfully submitted,

CARTER LEDYARD & MILBURN, LLP

By: ______________________

Alan S. Lewis
Two Wall Street
New York, New York 10005
(212) 732-3200

*Attorneys for Joshua Kestenbaum*

**EXHIBIT A**

PROB 8
(Rev. 7/04)

## U.S. PROBATION OFFICE
## MONTHLY SUPERVISION REPORT FOR THE MONTH Sept 2, 20 08

Name: Joshua Kestenbaum
DOB:
Court Name (if different):
Probation Officer: MS. Santiago

**PART A: RESIDENCE** *(If new address, attach copy of lease/purchase agreement.)*

Street Address, Apt. Number: 920 Park Ave
Own or Rent?
Home Phone: 212-772-3673
Cellular Phone: 917-302-0007
Pager:
City, State, Zip Code: NYC 10028
Persons Living With You: Vivian Kestenbaum, Elizabeth Kestenbaum, Sabina Kestenbaum
Secondary Residence:
Own or Rent?
Did you move during the month? ☐ Yes ☑ No
Mailing Address (if different):
E-Mail Address: Josh@bakemeawish.com
If yes, date moved:
Reason for Moving:

**PART B: EMPLOYMENT** *(If unemployed, list source of support under Part D.)*

Name, Address, Phone No. of Employer: Bake Me A Wish, 211 E 43 St, NYC 10017
Name of Immediate Supervisor:
Is your employer aware of your criminal status: ☑ Yes ☐ No
How many days of work did you miss? 0
Why?
Position Held: MGR
Gross Wages:
Normal Work Hours: 9-5
Did you change jobs? ☐ Yes ☑ No
Were you terminated? ☐ Yes ☑ No
If changed jobs or terminated, state when and why.

**PART C: VEHICLES** *(List all vehicles owned or driven by you.)*

| | Year/Make/Model/Color: | Mileage: | Tag Number: / Vehicle I.D.#: | Owner: |
|---|---|---|---|---|
| 1. | | | | |
| 2. | | | | |

**PART D: MONTHLY FINANCIAL STATEMENT**

Net Earnings from Employment: $5114.40
*(Attach Proof of Earnings)*
Other Cash Inflows:
TOTAL MONTHLY CASH INFLOWS: 5114.40
TOTAL MONTHLY CASH OUTFLOW:

Do you rent or have access to:
a post office box? ☐ Yes ☑ No
a safe deposit box? ☐ Yes ☐ No
a storage space? ☐ Yes ☐ No
Name and Address of Location:
Box No. or Space

Do you have a checking account(s)? ☑ Yes ☐ No
Bank Name: Commerce Bank
Account No.: 7925024601
Balance
Do you have a savings account(s)? ☐ Yes ☑ No
Bank Name:
Account No.:
Balance
Attach a complete listing of all other financial account information, if you have multiple accounts.

Does your spouse, significant other, or dependant have a checking or savings account that you enjoy the benefits of or make occasional contributions toward?
☐ Yes ☑ No
Bank Name:
Account No.:
Balance:

List all expenditures over $500 (including, e.g., goods, services, or gambling losses)

| Date | Amount | Method of Payment | Description of Item |
|---|---|---|---|
| 8/25 | 2500 | Bank check | US District Court |

PROB 8
(Rev. 7/04)



**PART E: COMPLIANCE WITH CONDITIONS OF SUPERVISION DURING THE PAST MONTH**

Were you questioned by any law enforcement officers?
☐ Yes ☑ No

If yes, date: ____

Agency: ____

Reason: ____

Were you arrested or named as a defendant in any criminal case?
☐ Yes ☑ No

If yes, when and where? ____

Charges: ____

Disposition: ____

(Attach copy of citation, receipt, charges, disposition, etc.)

Were any pending charges disposed of during the month?
☐ Yes ☑ No

If yes, date: ____

Court: ____

Disposition: ____

Was anyone in your household arrested or questioned by law enforcement?
☐ Yes ☑ No

If yes, whom? ____

Reason: ____

Disposition: ____

Did you have any contact with anyone having a criminal record?
☐ Yes ☑ No

If yes, whom? ____

Did you possess or have access to a firearm?
☐ Yes ☑ No

If yes, why? ____

Did you possess or use any illegal drugs?
☐ Yes ☑ No

If yes, type of drug: ____

Did you travel outside the district without permission?
☐ Yes ☑ No

If yes, when and where? ____

Do you have a special assessment, restitution, or fine? ☑ Yes ☐ No If yes, amount paid during the month: 2500

Special Assessment: ____ Restitution: 2500 Fine: ____

NOTE: ALL PAYMENTS TO BE MADE BY MONEY ORDER (POSTAL OR BANK) OR CASHIER'S CHECK ONLY.

Do you have community service work to perform?
☑ Yes ☐ No

Number of hours completed this month: 8

Number of hours missed: ____

Balance of hours remaining: 492

Do you have drug, alcohol, or mental health aftercare?
☑ Yes ☐ No

If yes, did you miss any sessions during this month?
☐ Yes ☑ No

Did you fail to respond to phone recorder instructions?
☐ Yes ☑ No

If yes, why? ____

**WARNING: ANY FALSE STATEMENTS MAY RESULT IN REVOCATION OF PROBATION, SUPERVISED RELEASE, OR PAROLE, IN ADDITION TO 5 YEARS IMPRISONMENT, A $250,000 FINE, OR BOTH.**

(18 U.S.C. § 1001)

I CERTIFY THAT ALL INFORMATION FURNISHED IS COMPLETE AND CORRECT.

[signature]
SIGNATURE ____ DATE ____

REMARKS:

____
U.S. Probation Officer ____ Date

RECEIVED:

____ Mail ____ OC

____ HC ____ CC

RETURN TO:

| CO. | EMPNO | DEPT. | CHECKNO |
|---|---|---|---|
| NA7 | KESTEJ | 100000 | 00000082 |

**Earn[illegible]s Statement**

Bake Me a Wish LLC
211 East 43rd St
3RD FLOOR
New York, NY 10017

Period Ending: 08/08/08
Pay Date: 08/08/08

Social Security Number: 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
Taxable Marital Status: Married
Exemptions/Allowances:
Federal: 12
State : 12

**JOSHUA KESTENBAUM**
**920 PARK AVENUE 8C**
**NEW YORK, NY 10028**

| Earnings | rate | time | this period | year to date |
|---|---|---|---|---|
| Salary | | 21.67 | 8,125.13 | |
| | Gross Pay | | $8,125.13 | 24,375.39 |

| Other Benefits and Information | this period | year to d |
|---|---|---|
| Title | | |

| Deductions | Statutory | this period | year to date |
|---|---|---|---|
| | Federal Income Tax | - 1,575.42 | 4,903.95 |
| | Social Security Tax | - 503.76 | 1,511.28 |
| | Medicare Tax | - 117.82 | 353.45 |
| | NY State WH | - 525.95 | 1,589.16 |
| | SDI | - 1.20 | 3.60 |
| | Local1 WH | - 286.58 | 886.20 |
| | Voluntary | | |
| | Net Pay | $5,114.40 | |

Bake Me a Wish LLC
211 East 43rd St
3RD FLOOR
New York, NY 10017

Payroll check number: 00000082
Period ending: 08/08/08
Pay date: 08/08/08

Pay to the order of: **JOSHUA KESTENBAUM**

This amount: ** FIVE THOUSAND ONE HUNDRED FOURTEEN DOLLARS AND 40/CENTS ** $5,114.4

AUTHORIZED SIGNATURE

**EXHIBIT B**

82. MONTHLY INCOME AND EXPENSES OF SELF, SPOUSE AND DEPENDENTS.

| LIST ALL MONEY OR OTHER INCOME RECEIVED FROM ANY SOURCE ON A MONTHLY BASIS BY YOU, YOUR SPOUSE, OR ANY MEMBER OF YOUR HOUSEHOLD, IDENTIFYING THE SOURCE, RECIPIENT AND AMOUNT. FOR ANY INCOME RECEIVED ON A BASIS OTHER THAN MONTHLY, CONVERT TO A MONTHLY BASIS FOR PURPOSES OF THIS STATEMENT. (even if disclosed above) | | LIST ALL MONTHLY EXPENDITURES FOR WHATEVER PURPOSE FOR YOU OR YOUR HOUSEHOLD FOR THE PAST TWELVE MONTHS, IDENTIFYING THE PURPOSE AND AMOUNT, INCLUDING PROJECTED EXPENSES. FOR ANY EXPENDITURE WHICH VARIES FROM MONTH TO MONTH, INDICATE A RANGE OF AMOUNTS AND THE AVERAGE AMOUNT ON A MONTHLY BASIS. (even if disclosed above) | |
|---|---|---|---|
| Take home pay (self) | $ 2614.00 | Rent/mortgage | $ 12500.00 |
| " (spouse) | $ 2400.00 | Real estate taxes | $ |
| " (dependents) | $ | Food (home, work, school) | $ 250.00 |
| Overtime (est. if necessary) | $ | Heat (gas, oil, wood) | $ |
| Net Business Income (Amount Earned after Ord. and Necess. Bus. Expenses-- if negative enter $0. Do not enter a loss.) | $ | Life Insurance | $ 200.00 |
| Interest/Dividends | $ | Electricity | $ 280.00 |
| Support/Alimony | $ | Telephone | $ 360.00 |
| Pension/Social Security | $ | Cable TV | $ 220.00 |
| Social Services | $ | Other utilities | $ |
| Food Stamps | $ | Health Insurance | $ 950.00 |
| Rent Income / Royalties | $ | Medical | $ 1800.00 |
| Benefits from the U.S. | $ | Public Transportation | $ |
| Disability compensation | $ | Clothing | $ 100.00 |
| Retirement pay | $ | Childcare | $ |
| Military pay (active) | $ | Tuition | $ 1787.00 |
| Commissions / Advances | $ | Child support/alimony | $ |
| Consulting Fees | $ | Entertainment | $ 100.00 |
| Annuities | $ | Personal care | $ |
| Sales of Assets | $ | Drycleaning/laundry | $ 100.00 |
| Repayment of Loans | $ | Gifts | $ |
| Payments on obligations made on your behalf by others | $ | Newspapers/Magazines | $ |
| Fringe benefits (e.g. car) | $ | Church/charities | $ 190.00 |
| Gifts / Bonuses | $ 700.00 | Tobacco | $ |
| Distributions (from partnerships & subchapter S corporations, and from limited liability companies) | $ | Vehicle Ownership Costs (Total monthly lease or purchase/loan payments) | $ |